UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHANELL THOMAS, individually          CIVIL ACTION
and on behalf of minor son, D.T.

v.                                    NO. 12-896

CITY OF NEW ORLEANS, ET AL.           SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are two motions: (1) a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by the City of New Orleans, the New Orleans Police Department, Superintendent Ronal Serpas, and NOPD Officers Davis and Boyd; and (2) motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by the Louisiana Recovery School District, Patrick Dobard, in his official capacity as Superintendent of RSD, Kelly Batiste, individually and in her official capacity as the Principal of Fannie C. Williams Charter School, and Tarynesa Williams, individually and in her official capacity as the Vice Principal of Fannie C. Williams Charter School.  For the reasons that follow, the motions are GRANTED.

**Background**

This civil rights litigation concerns a mother's challenge to the allegedly excessive corporal punishment of her seven year old son, a special education student, by school administrators and school security and city police officers; in particular, the boy and his mother charge that, in response to an   unspecified

1

behavioral issue, a school principal and vice principal tried to lock the boy in a closet and, when he ran away, he was struck with a fly swatter, held down on the ground and, ultimately, handcuffed by responding police officers who then followed the boy and his aunt to the hospital so that he could undergo a psychological evaluation.

Taken in the light most favorable to the plaintiffs, the facts are as follows:  In 2011 D.T. was a third-grade special education student at Fannie C. Williams Charter School, located in New Orleans.   On April 7, 2011, the school's principal, Kelly S. Batiste, and vice principal, Tarynesa Williams, attempted to lock D.T. in a closet in response to "an alleged behavioral issue."[1] Terrified, D.T. tried to run from Batiste and Williams; in doing so, he knocked papers off of Batiste's desk.   Williams then struck D.T. with a fly swatter and shoved him down.   Batiste and Williams then instructed two school security officers[2] to hold D.T. down.[3]

Meanwhile, the police were called.   When New Orleans Police Department Officers Davis and another unidentified officer arrived

---

[1]This incident apparently took place in Principal Batiste's office.

[2]In the complaint, the school security officers are identified only as Officer Montgomery and Officer Stewart; apparently neither has been served with process or appeared in this litigation.

[3]Each of these individuals knew or should have known that D.T. was easily frightened and did not like to be touched.

at the school, they allegedly shoved down D.T. and held him with excessive force until D.T.'s hands were handcuffed behind his back for an unknown length of time.[4]   When D.T.'s mother, Chanell Thomas, arrived she was not allowed in the room with D.T. to comfort him.   When D.T.'s aunt, Tamila Pierce, arrived she was told to drive D.T. to Children's Hospital while Officer Brian Boyd followed behind in his car.  Once at the hospital, Pierce and D.T. were told to relocate to Tulane Medical Center, where D.T. was evaluated for body aches and a psychological evaluation.

On April 5, 2012 Chanell Thomas, individually and on behalf of her minor son, D.T., sued the City of New Orleans; Mayor Mitch Landrieu; the New Orleans Police Department; Superintendent Ronal Serpas; NOPD Officers Davis, Boyd, and John Doe; the Louisiana Recovery School District; Superintendent Patrick Dobard; Principal of Fannie C. Williams Charter School, Kelly S. Batiste; and Assistant Principal Tarynesa Williams; as well as the two school security officers, Montgomery and Stewart.  Although it is not entirely clear from the complaint, it appears that as to the individual state defendants, Dobard is sued only in his official capacity, Batiste is sued in her official and individual capacity,

---

[4]The plaintiffs do not estimate the amount of time that elapsed or whether D.T. was held down by school security until the time the police officers arrived and, if so, how he was shoved down again by police officers.

and Williams is sued in her official and individual capacity.[5]
With regard to the individual City defendants, it appears they are
all sued in their official capacity and that NOPD Officers Davis,
John Doe, and Boyd are sued in their individual capacities.[6]   The
plaintiffs assert that their lawsuit arises under the Fourth,
Fifth, and Fourteenth Amendments to the United States Constitution;
as well as arising under 42 U.S.C. §§ 1983 and 1988; under the
Louisiana governmental tort liability statutes; and under Louisiana
civil law for intentional or negligent infliction of emotional
distress, loss of consortium, negligence, negligent supervision,
gross negligence, assault, false imprisonment, false arrest, and
civil conspiracy.

In sum, the plaintiffs assert four counts.   In Count 1, the
plaintiffs assert that Batiste and Williams used excessive force
against D.T., and unreasonably arrested and seized him, when they

---

[5]The plaintiffs suggest that they "sue[] each and all
Defendants in both their individual and official capacities."  But
the Court must look to the substantive allegations, and not to the
plaintiffs' conclusory statement, to make this determination.

[6]The Court notes that plaintiffs only reference Mayor
Landrieu in the case caption; he is not listed as a party in the
complaint nor are any claims asserted against him except to the
extent the complaint's introduction suggests "Action is also
brought against the City of New Orleans (Mayor Mitch Landrieu) and
the New Orleans Police Department (Superintendent Ronal Serpas) for
their failure to properly train and supervise [Officer Davis and
John Doe] in the proper use of force and techniques used to secure
a minor child with special needs...."  Likewise, Officer Davis
is named in the caption of the complaint, but he is not listed as a
party; unlike Mayor Landrieu, however, Officer Davis is mentioned
in Counts 3 and 4.

attempted to lock him in a closet and when they held him down and restrained him.[7]  According to the plaintiffs, D.T. was violently assaulted, battered, tortured and suffered humiliation and degradation due to outrageous treatment, and suffered intentional infliction of emotional distress due to the punishment and torture by Batiste and Williams with the fly swatter.

Count 2 focuses on Dobard and the RSD; the plaintiffs assert that Dobard and the RSD "acting under color of law and pursuant to official policy or custom had knowledge, or...should have had knowledge [and power to prevent] or aid in preventing" the force used against D.T. but "with deliberate indifference and callous disregard of [D.T.'s] rights failed or refused to do so."[8]

Count 3 focuses on NOPD Officers Davis and John Doe; the plaintiffs assert that D.T. was met with excessive force when they "handcuffed an already terrified, unarmed, defenseless child weighing in at less than 60 pounds, who did not resist arrest nor could resist arrest in restraints, was never violent, nor a threat to the defendants."  The plaintiffs also assert that Officer Boyd

---

[7]At the end of Count 1 plaintiffs allege that Batiste, Williams, and Officer Montgomery and Officer Doe, were acting under color of state law under the direction and control of Superintendent Patrick Dobard and for the Recovery School District.

[8]The plaintiffs also suggest in the complaint's introduction that the Louisiana Recovery School District and Superintendent Patrick Dobard failed to properly train and supervise Batiste, Williams, Montgomery, and Stewart in the proper de-escalation procedures prescribed by state or federal law for dealing with a child that has special needs.

"deprived [D.T.] of his liberty without due process...and deprived him of equal protection of the laws in violation of the Fifth and Fourteenth Amendments of the  U.S. Constitution and 42 U.S.C. § 1983."

Finally, in Count 4, the plaintiffs focus on NOPD Officer Boyd, Ronal Serpas, and the NOPD generally, also mentioning Officers Davis and John Doe.  The plaintiffs assert that Officer Brian Boyd was acting under the direction and control of Superintendent Ronal Serpas and for the New Orleans Police Department and that

> [a]cting under color of law and pursuant to official policy or custom, Ronal Serpas and the New Orleans Police Department knowingly, recklessly, or with deliberate indifference to [D.T.'s] rights, failed to instruct, supervise, control and discipline on a continuing basis Officers Davis and John Doe in their duties to refrain from: (a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities; (b) unlawfully and maliciously arresting a citizen and otherwise using unreasonable excessive force by placing a seven year old defenseless child in handcuffs which is a violation of [D.T.'s] his civil rights; (c)conspiring to violate the rights, privileges and immunities guaranteed to [D.T.] by the Constitution and laws of the United States and Louisiana; and (d) otherwise depriving D.T. of his constitutional and statutory rights, privileges, and immunities under [federal and state law].

The plaintiffs also assert that Serpas, individually and for the New Orleans Police Department, should have exercised their duties to train and supervise, which would have prevented the violations of D.T.'s rights.  The plaintiffs also assert that Serpas,

individually and as the superintendent for NOPD, under color of law, "approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the Defendant police officer."

The plaintiffs seek damages including damages for battery and torture; damages for infliction of mental and emotional distress due to outrageous conduct of all adult defendants; damages for assault; loss of consortium; bystander "Lejuene" damages; false imprisonment/arrest; past, present and future mental anguish; past, present and future pain and suffering; past, present and future medical expenses; punitive damages under § 1983 for torture and injury done with malice; and attorney's fees and court costs.

The defendants now seek dismissal of the plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

I.
A.

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Patrick Dobard, sued in his official capacity, and Batiste and Williams, to the extent that they are sued in their official capacities, invoke the doctrine of sovereign immunity.

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The Court may find a plausible set

7

of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

*B.*

All defendants seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6).  See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

Rule 12(b)(6) allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted.  Such a motion "'is viewed with disfavor and is rarely granted.'"  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

"'To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1940. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted).

The United States Supreme Court suggests a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950. First, the Court must identify pleadings that are conclusory and thus not entitled to the assumption of truth. Id. A corollary: legal conclusions "must be supported by factual allegations." Id. Second, for those pleadings that are more than merely conclusory, the Court assumes the veracity of those well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement to relief." Id.

This facial plausibility standard is met when the plaintiffs pleads facts that allow the Court to "draw the reasonable inference

9

that the defendant is liable for the misconduct alleged." Id. at 1949. Claims that are merely conceivable will not survive a motion to dismiss; claims must be plausible. Twombley, 550 U.S. at 570; see also Iqbal, 129 S. Ct at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully"). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal 129 S. Ct. at 1949 (internal quotations omitted). In the end, evaluating a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiffs' claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting the motion into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5th Cir. 2003).

The plaintiffs here do not attach or refer to matters outside of their complaint, but accompanying their opposition papers they submit certain evidence that purports to be a Behavior Intervention Plan for D.T. and a School Security Officers Manual.  Even if these documents were central to the plaintiffs' claims and referred to or incorporated into the complaint, the Court would disregard them as immaterial.[9]  The Behavior Intervention Plan and School Security Officers Manual both post-date the incident that gives rise to the complaint, and the Manual also post-dates the filing date of the complaint.[10]

## II.

The State defendants -- RSD, Dobard, Batiste, and Williams --

---

[9]The State defendants request that the Court strike the plaintiffs' exhibits as immaterial pursuant to Rule 12(f).  Rule 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter...."  The Court finds that striking the immaterial exhibits is unnecessary; it is sufficient that the materials are disregarded. It is interesting to note, however, that in addition to outlining the recommended intervention by teachers (including that he does not like to be touched), the Behavior Intervention Plan also provides more information than the complaint's allegations regarding D.T.'s behavior issues, including that he suffers from PTSD and ADHD and that he has a "tendency to run away and off campus" when scared and upset.  But, again, any insight provided by the Behavior Intervention Plan is immaterial to the incident here, which occurred before this particular Plan was developed.

[10]For some reason, the Manual accompanies the plaintiffs' opposition to the City defendants' motion to dismiss but the Manual appears to focus on procedures for school security officers, who have not been served with the complaint and, even if they had, would not be considered City defendants.

first seek dismissal of claims asserted against them in their official capacity on the ground that they are immune from suit. The Court must first consider, however, whether the RSD is even an entity capable of being sued.

*A.*

Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued is determined... by the law of the state where the court is located."   The Louisiana Civil Code defines a juridical person as "an entity to which the law attributes personality, such as a corporation or partnership." La.C.C. art. 24.   With regard to governmental agencies, the legislature will specifically endow the agency with the capacity to sue or be sued in its own name.

The Louisiana Supreme Court in <u>Roberts v. Sewerage and Water Board of New Orleans</u>, 634 So.2d 341 (La. 1994) provides the framework for determining a governmental entity's juridical status. In determining "whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue", the state high court instructs that courts focus their analysis on such factors as independent managing, financing, and operations of the board and, if "the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity," then the local government unit at issue may be deemed a separate juridical person.

See id. at 346-47.   Applying this framework, the Louisiana Fourth Circuit Court of Appeal has held that RSD is not a juridical entity capable of suing or being sued.   Tankerson v. Vallas, 34 So.3d 355, 356 (La.App. 4 Cir. 3/10/10)("we find that RSD is not a juridical person and that the proper party to be sued in a claim for or against the RSD is the [Department of Education].").   Another Section of this Court has likewise determined that "the RSD is not a juridical person capable of suing or being sued under the Roberts analysis."   See Williams v. Recovery School District, --- F. Supp. 2d ---, No. 11-1588, 2012 WL 893421, at *3 (E.D. La. Mar. 15, 2012)(Vance, J.) (citing Adams v. Orleans Parish Recovery Sch. Dist., No. 11-30751, 2012 WL 612777, at *1 (5th Cir. Feb. 27, 2012)(unpublished)(noting that "RSD is not an entity that can sue or be sued" and citing Tankerson).   The Court agrees.

Indeed, the plaintiffs arguments to the contrary fail to undermine the observations made by Judge Vance in Williams, which apply equally here:

> Although the Louisiana Supreme Court has not yet spoken on this issue, the Louisiana Fourth Circuit Court of Appeal held that the Recovery School District was not a juridical person capable of suing or being sued under the Roberts analysis.... The [Tankerson] court noted that both the Department of Education and the State Board of Elementary and Secondary Education are a "body corporate" under the Louisiana Revised Statutes.... La.Rev.Stat. 36:642 (Department of Education); La.Rev.Stat. 17:1 (Board of Elementary and Secondary Education).   The court also noted that while Louisiana Revised Statute 17:51 "makes a parish school board a 'body corporate with power to sue[,]' [t]he statute authorizing the RSD (La.Rev.Stat. 17:1990) contains no

13

equivalent language...."  For these reasons, the court held that "the RSD does not function independently of the DOE and BESE as it is not a body corporate capable of being sued or suing indirectly."

Moreover, RSD's organizing statute clearly states that RSD "shall be administered by the state Department of Education, subject to the approval of the State Board of Elementary and Secondary Education." La.Rev.Stat. § 17:1990(A)(2).  This power structure further contrasts RSD with parish school boards, which "must comply with State laws ... [but] are autonomous political creatures that are separate and distinct entities providing the framework for education in their respective parishes."  Here, however, RSD is by statute an "intermediate educational unit" that is not capable of self-administration. La.Rev.Stat. § 17:1990(B)(1)(a). Accordingly, the Court finds that the RSD is not a juridical person capable of suing or being sued under the Roberts analysis.

Williams, 2012 WL 893421, at *3 (internal citations omitted).  The plaintiffs' claims against the RSD must be dismissed.

*B.*

Having determined that the RSD is not a juridical entity capable of suing or being sued, the Court now considers the State defendants' invocation of sovereign immunity. Patrick Dobard, sued in his official capacity, and Batiste and Williams, to the extent that they are sued in their official capacities, invoke the doctrine of sovereign immunity and urge the Court to dismiss plaintiffs' official capacity claims on the ground that this Court lacks subject matter jurisdiction; they contend that, because the Louisiana Recovery School District is not an entity capable of being sued, the Louisiana Department of Education would be the proper defendant here.  But, they continue, the Louisiana DOE and

14

its employees who are sued in their official capacities are entitled to sovereign immunity from suit in federal court. The Court agrees.

The Eleventh Amendment bars suits by private citizens against a state in federal court. K.P. v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010)(citing Hutto v. Finney, 437 U.S. 678, 700 (1978)). This immunity extends to protect state actors who act in their official capacities. Id. Informed by the Eleventh Amendment, "an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993). Unless a state has waived Eleventh Amendment immunity, neither a state nor its agencies are subject to suit in federal court. Id.

The State of Louisiana has not consented to this lawsuit. Louisiana has not waived its sovereign immunity for suits brought in federal court. Richardson v. Southern University, 118 F.3d 450, 453 (5th Cir. 1997); Delahoussaye v. City of New Iberia, 937 F.2d 144, 147 (5th Cir. 1991). Louisiana Revised Statute 13:5106(A), in fact, provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." Moreover, Louisiana has not waived sovereign immunity for suits under 42 U.S.C. § 1983. Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 314 (5th Cir.

1999).   Accordingly, in each unsanctioned instance of federal lawsuit, the State or its agency must affirmatively waive its sovereign immunity.   Port Auth. Trans-Hudson Corp. v. Feeny, 495 U.S. 299, 305 (1990); Stem v. Ahearn, 908 F.2d 1, 4 (5th Cir. 1990). The State of Louisiana, through its agencies and officials sued in their official capacities has represented that it does not consent to this suit and it declines to waive its sovereign immunity.

The State defendants point out that, while the plaintiffs have not named the Department of Education as a defendant, it would be the proper defendant.   Indeed, this Court has already determined that the RSD is not amenable to suit because it is merely a sub-office of the DOE without independent capacity to sue or be sued. It is not a juridical entity.   The defendants anticipate that the plaintiffs may attempt to amend their complaint to substitute DOE for RSD and because Patrick Dobard, Kelly Batiste, and Tarynesa Williams are each DOE-employed officials who are sued in their official capacities; the defendants contend that the DOE is entitled to sovereign immunity from suit in federal court and that DOE's sovereign immunity extends to Dobard, Batiste, and Williams, to the extent they are sued in their official capacities.

The Court does not consider a request to amend where none is made, but because the plaintiffs do not credibly dispute that their official capacity claims against Dobard, Batiste, and Williams are effectively claims against the DOE, the Court properly resorts to

the analysis applied to determining whether a political entity is
an "arm of the State" for the purposes of sovereign immunity. As
the State defendants point out, however, the Court need not apply
anew the <u>Vogt</u> factors[11] because the Fifth Circuit has previously
determined that the Louisiana Department of Education and DOE's
superintendent, sued in his official capacity, are entitled to
sovereign immunity in federal court. <u>See</u> <u>Swindle v. Linvingston</u>
<u>Parish School Bd.</u>, 655 F.3d 386, 388 (5th Cir. 2011). The Fifth
Circuit observed:

> The State Superintendent of Education, sued in his
> official capacity, the DOE and the BESE, argue that they
> are immune from the suit because they are entitled to
> sovereign immunity. We agree. "[T]he Constitution does
> not provide for federal jurisdiction over suits [for
> money damages] against nonconsenting States." <u>Kimel v.</u>
> <u>Fla. Bd. of Regents</u>, 528 U.S. 62, 73, 120 S.Ct. 631, 145
> L.Ed.2d 522 (2000). Sovereign immunity also extends to
> state officials sued in their official capacity for
> monetary relief. <u>See</u> <u>id.</u>; <u>Monell v. Dep't of Soc.</u>
> <u>Servs.</u>, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L.Ed.2d

---

        [11]In <u>Vogt v. Board of Commissioners of the Orleans Parish</u>
<u>Levee District</u>, 294 F.3d 684, 689 (5th Cir. 2002), the Fifth Circuit
summarized the factors relevant in determining whether a lawsuit is
effectively one against the sovereign state:
>        (1) whether state statutes and case law
>        characterize the agency as an arm of the
>        state;
>        (2) the source of the funds for the entity;
>        (3) the degree of local autonomy the entity
>        enjoys;
>        (4) whether the entity is concerned primarily
>        with local, as opposed to statewide problems;
>        (5) whether the entity has authority to sue
>        and be sued in its own name; and
>        (6) whether the entity has the right to hold
>        and use property.
(internal citations omitted).

611 (1978)("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

Id. at 399.  Guided by Swindle, the Court finds that the Louisiana Department of Education's employees, Superintendent Dobard, Principal Batiste, and Vice Principal Williams, sued in their official capacities, are entitled to sovereign immunity from this suit for monetary relief.  Accordingly, the official capacity claims against Dobard, Batiste, and Williams are dismissed for lack of subject matter jurisdiction.[12]

### III.

Plaintiffs bring this civil rights challenge under 42 U.S.C. § 1983 for alleged violations of D.T.'s constitutional rights. Section 1983 creates a private right of action for violations of federally-secured rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United

---

[12]The State defendants alternatively suggest that all § 1983 claims against RSD, and official capacity claims against Dobard, Williams, and Batiste are not only barred by sovereign immunity, but also fail to state a claim upon which relief may be granted.  The Court agrees.  It is well-established that the State of Louisiana, its agencies and officers sued in their official capacities cannot be sued under § 1983 for monetary relief; § 1983 claims may only be brought against persons as the statute and case law define that term.  Neither a State, its agencies nor officials acting in their official capacities are persons under 42 U.S.C. § 1983.  See Fairley v. Stalder, 294 Fed.Appx. 805, 808-09 (5th Cir. 2008)(quoting "long and clearly established Supreme Court precedent on the matter," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

18

> States or other person within the jurisdiction thereof to
> the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws...shall be liable to
> the party injured....

42 U.S.C. § 1983.   To state a § 1983 claim, a plaintiff must

satisfy three elements:

> (1)     deprivation of a right secured by the U.S.
>         Constitution or federal law;
> (2)     that occurred under color of state law, and
> (3)     was caused by a state actor.

Victoria W. V. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citation

omitted).

*A.*

When plaintiffs seek money damages from government officials

for alleged violations of constitutional or statutory rights,

officials in their official capacities may invoke the defense of

qualified immunity.  Because it is an immunity from suit and not a

defense to liability, courts are advised to resolve the issue "at

the earliest possible stage in litigation."  Hunter v. Bryant, 502

U.S. 224, 227 (1991)(per curiam).

"Qualified immunity shields government officials from civil

damages liability," the U.S. Supreme Court has recently reiterated,

"unless the official violated a statutory or constitutional right

that was clearly established that the time of the challenged

conduct."  Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012);  Harlow

v. Fitzgerald, 457 U.S. 800, 818 (1982)(This doctrine protects

government officials against individual civil liability "insofar as

19

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"). In fact, "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

In resolving government officials' qualified immunity defenses, courts have traditionally applied the two-prong process articulated in Siegert v. Gilley, 500 U.S. 226 (1991) and mandated by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001). First, the Court must determine whether the plaintiffs have shown a violation of a constitutional right. Id. at 201. The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged

misconduct." <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009).[13]   Although
the Supreme Court has left to the district court's discretion the
sequence for undertaking these two inquiries, the Supreme Court has
increasingly indicated a preference for first considering whether
a purported right was clearly established by prior case law
"without resolving the often more difficult question whether the
purported right exists at all."   See <u>Reichle</u>, 132 S.Ct. at 2093
("This approach comports with our usual reluctance to decide
constitutional questions unnecessarily."); see also <u>Camreta v.
Greene</u>, 563 U.S. ---, 131 S.Ct. 2020, 2031 (2011)(observing that
"our usual adjudicatory rules suggest that a court *should* forbear
resolving this issue")(emphasis in original); see also <u>Pearson</u>, 555
U.S. at 238-39 (listing circumstances in which courts might be best

---

[13]In <u>Pearson</u>, the Supreme Court receded from <u>Saucier</u>, in
determining that, while the sequence articulated in <u>Saucier</u> is
often appropriate, it is no longer mandatory; accordingly, the
Court may consider these inquiries in any sequence and need not
even consider both.   See <u>Pearson</u>, 129 S.Ct. at 818-20 (reasoning
that because the <u>Saucier</u> process sometimes unnecessarily "results
in a substantial expenditure of scare judicial resources on
difficult questions that have no effect on the outcome of the
case...courts should have the discretion to decide whether that
procedure is worthwhile in particular cases").
     Step two of the qualified immunity analysis requires
courts to determine whether the defendants' conduct "was
objectively reasonable in light of clearly established law."
<u>Thompson v. Upshur County, Tex.</u>, 245 F.3d 447, 457 (5th Cir.
2001)(citations omitted).   "Fair warning" is the touchstone of this
analysis.   <u>Bush v. Strain</u>, 513 F.3d 492, 501-02 (5th Cir.
2008)(citations omitted).   "In other words, 'existing precedent
must have placed the statutory or constitutional question beyond
debate.'" <u>Reichle</u>, 132 S.Ct. at 2093 (quoting <u>Camreta v. Greene</u>,
563 U.S. ---, 131 S.Ct. 2020 (2011)).

served to bypass the first step of the <u>Saucier</u> process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

In other words:  qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law,' so we do not deny immunity unless 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  <u>Morgan v. Swanson</u>, 659 F.3d 359, 370-71 (5th Cir. 2011)(en banc)(internal quotations, citations, and footnotes omitted).  Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable.  <u>See</u> <u>Collier v. Montgomery</u>, 569 F.3d 214, 217-18 (5th Cir. 2009) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised"); <u>see also</u> <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323 (5th Cir. 2002)(<em>en banc</em>).  A plaintiff must establish that the defendants were either personally involved in the deprivation or that their wrongful actions were causally connected to the deprivation.  <u>James v. Texas Collin Co.</u>, 535 F.3d 365, 373 (5th Cir. 2008).  And, "each individual defendant's entitlement to qualified immunity [should be examined] separately."  <u>Jacobs v. West Feliciana Sheriff's Dept.</u>, 228 F.3d 388, 395 (5th Cir. 2000)(citation omitted).

1.        The State Defendants Are Entitled to Qualified
          Immunity Because The Plaintiffs Have Failed to
          State a Substantive Due Process Claim.

Principal Batiste and Vice Principal Williams seek to dismiss the plaintiffs' individual capacity claims on the ground that they are entitled to qualified immunity.   They contend that the plaintiffs' unexplained use of the phrase "unreasonable seizure" is insufficient to state a Fourth Amendment claim.   Moreover, they contend that the plaintiffs' Fourteenth Amendment claim, that the defendants violated D.T.'s substantive due process right to bodily integrity, fails as a matter of law.   The Court agrees.

Although it is not clearly identified in the complaint, the plaintiffs in their opposition papers suggests that they presents a cognizable Fourteenth Amendment claim "i.e., Ms. Batiste and Ms. Williams violated plaintiff[s'] substantive due process right (liberty interest) to be free of state-occasioned damage to his body."[14]   A summary of the facts contained in the complaint relating to this alleged substantive due process violation, as pertaining to

---

[14]The defendants point out that the plaintiffs use the phrase "unreasonable seizure" with regard to her claim against Batiste and Williams.   However, the defendants contend and this Court agrees that there are no facts pleaded that could be construed as a Fourth Amendment claim against Batiste and Williams. Because the plaintiffs make no argument in their opposition papers that would suggest that they are attempting to pursue a Fourth Amendment claim against Batiste and Williams, it appears that any prior intention to do so has been abandoned.   In any event, any attempt to pursue such a claim against Williams and Batiste is technically deficient and dismissed for failure to state a claim. See infra.

Williams and Batiste is as follows:

> While in Principal Batiste's office, Williams and Batiste both tried to lock D.T. in a closet *due to an alleged behavioral issue*. When D.T. tried to run from them, he knocked papers off of Batiste's desk. Williams then struck him with a fly swatter and shoved him down. Batiste and Williams then instructed two school security officers to hold D.T. down, even though they should have known that D.T. was easily frightened and did not like to be touched.

(emphasis added). The plaintiffs suggest that these allegations sufficiently state a claim for violation of D.T.'s substantive due process right. Batiste and Williams counter that, given the plaintiffs' allegation in their complaint that their conduct toward D.T. was "due to an alleged behavior issue", the § 1983 substantive due process claim must be dismissed. The Court agrees.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive a person of life, liberty or property without due process of law." The Supreme Court has acknowledged: "Although a literal reading of the Clause might suggest that it governs only the procedures by which a State may deprive persons of liberty, for at least 105 years,...the Clause has been understood to contain a substantive component as well...." Planned Parenthood v. Casey, 505 U.S. 833 (1992)(internal citations omitted). "This substantive component of the Due Process Clause 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" Doe v. Taylor Ind. Sch. Dist., 15 F.3d 443, (5th Cir. 1994)(citation and

internal quotations omitted).

The"common law principle" of corporal punishment "predates the American Revolution." <u>Ingraham v. Wright</u>, 525 F.2d 909, 917 (5th Cir. 1976)(en banc), <u>aff'd</u>, 430 U.S. 651 (1977) ("Paddling of recalcitrant children has long been an accepted method of promoting good behavior and instilling notions of responsibility and decorum into the mischievous heads of school children."). As the Fifth Circuit has recognized "coincidently with the genesis of corporal punishment, reasonable limits traditionally have been imposed upon student discipline so as not to give teachers a license to commit state-sanctioned child abuse." <u>Id.</u>

The Due Process Clause as incorporated into the Fourteenth Amendment generally protects the right to be free from bodily restraint and punishment. <u>See</u> <u>Ingraham v. Wright</u>, 430 U.S. 651, 673-74 (1977)(rejecting Eighth Amendment and procedural due process challenge to constitutionality of corporal punishment where state has adequate common law remedies).[15] The United States Supreme Court has not determined, for qualified immunity purposes, "whether or under what circumstances corporal punishment of a public school child may give rise to an independent federal cause of action to vindicate substantive rights under the Due Process Clause" (<u>see</u>

_____

[15]In <u>Ingraham</u>, the Supreme Court determined that 20 swats to a student, which caused him to miss school for days with bruises and disabled his arms for a week, did not violate procedural due process guarantees.

25

Ingraham, 430 U.S. at 678 n.47), but the U.S. Fifth Circuit Court of Appeals case literature clearly "dictate[s] that injuries sustained incidentally to corporal punishment, irrespective of the severity of those injuries or the sensitivity of the student, do not implicate the due process clause *if the forum state affords adequate post-punishment civil or criminal remedies* for the student to vindicate legal transgressions." See Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 875 (5th Cir. 2000)(quoting Fee v. Herndon, 900 F.2d 804 (5th Cir. 1990), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990)(emphasis in original)).

It is well-established, then, as a matter of law under Fifth Circuit precedent, that the conduct of which the plaintiffs complain is not a constitutional violation: the United States Court of Appeals for the Fifth Circuit does not permit public school students to bring claims for excessive corporal punishment as substantive due process violations under § 1983 if the state provides an otherwise adequate remedy.  Moore, 233 F.3d at 874-75.[16]

---

[16]The Fifth Circuit has observed:
We have held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage. In Fee v. Herndon, we reiterated that "[c]orporal punishment in public schools 'is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an

26

The Fifth Circuit has already determined that Louisiana affords adequate remedies for excessive corporate punishment through its tort law and by statute.  <u>See</u> <u>Coleman v. Franklin Parish Sch. Bd.</u>, 702 F.2d 74, 76 (5th Cir. 1983).  Because there are adequate local remedies through state tort law, the plaintiffs' substantive due process claim fails as a matter of law.

Notwithstanding the clearly established law that precludes their claim, the plaintiffs invoke two cases that they say support the viability of the Fourteenth Amendment claim, <u>Jefferson v. Ysleta Indep. Sch. Dist.</u>, 817 F.2d 303 (5th Cir. 1987) and <u>Fee v. Herndon</u>, 900 F.2d 804 (5th Cir. 1990).  Neither case supports that position.  In <u>Jefferson</u>, the Fifth Circuit held that the restraint of a second-grade student to a chair for a whole school day and a "substantial portion" of a second day violated that student's right to bodily integrity.  817 F.2d at 305.  The plaintiffs here insist that "if constraining a student to a chair violated the student's

---

atmosphere conducive to learning.'" Educators in states that proscribe student mistreatment and provide a remedy "do not, by definition, act 'arbitrarily,' a necessary predicate for substantive due process relief."
<u>Moore</u>, 233 F.3d at 875 (internal citations and footnotes omitted)(because Texas law provides adequate remedies, the court held there was no substantive due process violation under circumstances where student suffered severe injuries as a result of punishment imposed by physical education teacher that forced student to do 100 squat thrusts because he violated a class rule of talking during roll call).  In other words, as a matter of law, corporal punishment is not arbitrary if the state has local remedies to address the allegedly offensive conduct.

substantive due process rights, then constraining a student to the floor and attempting to lock him in a closet qualifies as a violation of the same Constitutional right."  But the plaintiffs overlook the materially different context informing the Fifth Circuit's holding in Jefferson:

> We are persuaded that in January 1985, a competent teacher knew or should have known that to tie a second-grade student to a chair for an entire school day and for a substantial portion of a second school day, as an educational exercise, with no suggested justification, such as punishment or discipline, was constitutionally impermissible.  A young student who is not being properly punished or disciplined has a constitutional right not to be lashed to a chair through the school day and denied, among other things, the basic liberty of access to the bathroom when needed.

Jefferson, 817 F.2d at 305.  Jefferson's facts separate it from the case of D.T.

The plaintiffs' invocation of Fee to support her position is similarly misleading and unreliable.  Taking a quotation from Fee out of context, the plaintiffs insist that the Fifth Circuit held that infliction of "corporal punishment in schools is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."[17]

Fee, in fact, more accurately advances the defendants'

---

[17]This proposition is followed by the Fifth Circuit's observation that "[t]hus, reasonable corporal punishment is not at odds with the fourteenth amendment and does not constitute arbitrary state action."  Fee. 900 F.2d at 808.

position.   The Fifth Circuit characterized the dispute there as

"present[ing] the question of whether the federal Constitution

independently shields public school students from excessive

discipline, irrespective of state-law safeguards." <u>Fee</u>, 900 F.2d

at 808.   In <u>Fee</u>, the Fifth Circuit affirmed the dismissal of a

plaintiff's claims on a motion to dismiss under Rule 12(b)(6).   <u>Id.</u>

Contrary to the plaintiffs' attempt here to cherry-pick certain

principles of law that inform this Circuit's substantive due

process jurisprudence, the Fifth Circuit in <u>Fee</u> made observations

so uniquely and powerfully pertinent to this matter that they

undermine plaintiffs' attempt to state a constitutional violation:

> A sixth grade special-education student became disruptive
> during classroom instruction, prompting the use of
> corporal punishment by the school's principal to restore
> discipline.   The parents...maintain that the principal
> beat their emotionally disturbed child so excessively,
> however, that the student was forced to remain in
> psychiatric rehabilitation for months....
>
> The plaintiffs commenced this action pursuant to 42
> U.S.C. § 1983 against the school district and various
> educators, averring that the fourteenth amendment's
> substantive due process guarantee operates to ban
> excessive corporal punishment in public schools.   Pendent
> state-law tort claims were attached to this civil rights
> suit....   Indisputably, however, state remedies–both
> criminal and civil–are available in Texas and proscribe
> the excessive use of corporal punishment against
> students, including emotionally handicapped children.
> That being so, our precedents instruct that the
> substantive component of the due process clause, though
> selectively applied in other contexts, is inoperative
> under the facts herein presented.
>
> We adhere to this circuit's rule that no arbitrary state
> action exists, by definition, where states affirmatively
> impose reasonable limitations upon corporal punishment

> and provide adequate criminal and civil remedies for
> departures from such laws. Accordingly, we conclude that
> defendants here, all of whom allegedly acted in
> contravention of Texas's criminal or civil laws, have not
> implicated federal substantive due process
> considerations, irrespective of the argued capriciousness
> of the corporal punishment imposed. Thus, federal
> constitutional relief is not among the plaintiffs'
> available remedies, and consequently we affirm.

Fee, 900 F.2d at 805-06. As Fee makes clear, "the doctrine of substantive due process focuses expressly upon the arbitrariness of state action". Id. at 810. Given that Louisiana provides for adequate post-punishment relief in favor of students through its tort law, the plaintiffs cannot rely on substantive due process concerns here.[18]

The plaintiffs simply have failed to plead facts that, if true, would show that Batiste and Williams violated D.T.'s Constitutional rights. Accordingly, Batiste and Williams, individually, are entitled to immunity from suit from suit from the plaintiffs' § 1983 claims.

2.    The City Defendants Are Entitled to Qualified Immunity Because the Plaintiffs Have Failed to Allege a Violation of a Clearly Established Constitutional Right.

The City defendants -- first, the NOPD officers -- sued in

_____

[18]In the opposition papers but not in the complaint, the plaintiffs assert that Williams and Batiste knew that D.T. "ha[d] been diagnosed with behavioral/emotional problems including but not limited to PTSD and ADHD." But this would not save the plaintiffs' claim because they have alleged in their complaint that Williams and Batiste's conduct was in response to an alleged behavioral issue.

their individual capacity contend that it is unclear what federal
right the plaintiffs are alleging were violated and, even assuming
the plaintiffs attempt to assert an excessive force or unreasonable
seizure claim, the plaintiffs fail to allege facts that support a
constitutional violation.  Accordingly, the City defendants, sued
in their individual capacity, insist that they are entitled to
qualified immunity.  Because the plaintiffs maintain the burden of
overcoming a defendants' invocation of qualified immunity and here
they fail to do so, the individual capacity claims against
defendants must be dismissed.[19]

"The right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated...." This is the sacred mandate of
the Fourth Amendment.

"Students have a constitutional right under the Fourth and
Fourteenth Amendments to be free from unreasonable searches and
seizures while on school premises."  Porter v. Ascension Parish
Sch. Bd., 393 F.3d 608, 621-22 (5th Cir. 2004)(citing New Jersey v.
TLO, 469 U.S. 325, 334-37 (1985)); Hassan v. Lubbock Indep. Sch.
Dist., 55 F.3d 1075, 1079 (5th Cir. 1995)(noting that a student's

---

[19]The Court observes that the plaintiffs continue to argue
that D.T.'s substantive due process rights were violated.  But the
Court has already determined that this claim fails as a matter of
law and the plaintiffs fail to explain how this claim would fare
any better against the police officers who, according to the
plaintiffs' allegations, responded to the school officials' call
for back-up.

constitutional right to be free from unreasonable seizure "extends to seizures by or at the direction of school officials."). But "[t]he [Supreme] Court [has] indicated that although the Fourth Amendment applies in schools, the nature of those rights is what is appropriate for children in school." Milligan v. City of Slidell, 226 F.3d 652, 654-55 (5th Cir. 2000)(citation omitted). "Fourth Amendment rights...are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 656 (1995).

Notwithstanding these precedents, there is some confusion among counsel as to whether the Fourth Amendment even applies in this case.[20] Perhaps this confusion is not entirely unfounded: "permitting students to bring excessive force claims under the Fourth Amendment would eviscerate this circuit's rule against prohibiting substantive due process claims on the part of schoolchildren for excessive corporal punishment." See Flores v. School Bd. of DeSoto Parish, 116 Fed.Appx. 504, 510 (5th Cir. Nov. 16, 2004)(unpublished)(noting that "[t]he Supreme Court and this circuit have...recognized that preservation of order in the schools allows for closer supervision and control of school children than would otherwise be permitted under the Fourth Amendment."). In

---

[20]The Court notes that the plaintiffs' and City defendants' papers suffer from the same inadequacies.

Flores, a special education student and his mother sued various school-related agencies after an incident in which a teacher allegedly threw a student against the wall, placed his hands around the student's neck, and began to choke him while threatening bodily harm. Id. In an unpublished opinion, the Fifth Circuit declined to recognize the plaintiffs' claim under the Fourth Amendment "[g]iven th[e] prohibition against constitutional claims for corporal punishment, the special constitutional status of schoolchildren, and the fact that the momentary 'seizure' complained of in this case is not the type of detention or physical restraint normally associated with Fourth Amendment claims."

In Doe v. S&S Consol. I.S.D., 149 F. Supp. 2d 274, (E.D. Tex.), aff'd, 309 F.3d 307 (2002), a mother and her child sued school officials under § 1983 for wrapping the emotionally disturbed and disruptive student in sheets, duct-taping her mouth shut, placing her face down on a cot, and leaving her in an isolated room. The district court summarily dismissed, on qualified immunity grounds, the Fourth Amendment claim in particular, finding that the plaintiffs failed to allege the violation of a clearly established right under the Fourth Amendment. Id. at 286-87. In rejecting the argument that the child had been unreasonably "seized" by school officials, the district court simply "d[id] not believe that the amendment readily captures school officials restraining a 'raging' child or placing

33

her in a timeout room." Id. at 287.   The Fifth Circuit affirmed.

If the Fifth Circuit has declined to recognize school children's claims under the Fourth Amendment for *school officials'* use of restraining techniques,[21] it seems that school children's claims against police officers responding to a school's request for back-up cannot be analyzed in a way that is divorced from the school context.[22]   This is particularly so when Fourth Amendment reasonableness analyses are so context-driven.   The fact that this Court even has to speculate as to what standard[23] to apply to the

---

[21]See Flores, 116 Fed.Appx. at 510 (unpublished); see also Christine Florick Nishimura, Note, *Eliminating the Use of Restraint and Seclusion Against Students with Disabilities*, 16 Tex. J. On C.L. & C.R. 189 (Spring 2011)(noting that "the Fifth Circuit...has practically eviscerated all Fourth Amendment claims relating to restraint [of schoolchildren]").

[22]It is, after all, the *student's* constitutional rights on which the Court must focus.

[23]The Court articulates the standards typically applied to police officers but notes that it has not been suggested by counsel that these standards apply to police officer conduct toward students on school grounds.
     When a plaintiff brings a claim under federal law contending that a police officer used excessive force in apprehending or arresting a person in violation of the Fourth Amendment, the plaintiff must first demonstrate that he was seized, which may be shown when "by means of physical force or show of authority, [an officer] has in some way restrained the liberty of a citizen". See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).   Then, the plaintiff must show that he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000).   The injury must be more than de minimis, evaluated in the context in which the force was deployed. Tarver v. City of Edna, 410 F.3d 745, 751-52 (5th Cir. 2005)(finding that the plaintiff failed to satisfy the injury requirement for a § 1983 claim because

*police officers'* conduct toward a student here in order to determine if their conduct was constitutionally permissible seems determinative of the qualified immunity analysis: clearly established law does not put the constitutionality of the police officers' conduct beyond debate.[24]

The plaintiffs' allegations (that "Officers Davis and John Doe shoved down [D.T.] and held him with excessive force until Defendants Officers Davis and John Doe handcuffed him, with his hands behind his back" and that Officer Boyd unlawfully seized or arrested D.T. when he followed behind D.T.'s aunt's car when she took D.T. for a psychological evaluation), without more, do not

---

he did not allege any degree of physical harm greater than *de minimis* from the handcuffing"); <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 314 (5th Cir. 2001)(holding that "handcuffing too tightly, without more, does not amount to excessive force."). Only substantial psychological injuries are sufficient to satisfy the injury element of a claim for excessive force under the Fourth Amendment. <u>See</u> <u>Flores v. City of Palacios</u>, 381 F.3d 391, 397-98 (5th Cir. 2004).

[24]<u>Cf.</u> <u>Morgan v. Swanson</u>, 659 F.3d 359, 371-72 (5th Cir. 2011)(en banc). As the Fifth Circuit has observed:

> Although the Supreme Court has repeatedly admonished courts not to define clearly established law at a high level of generality, this does not mean that "a case directly on point" is required. Rather "existing precedent must have placed the statutory or constitutional question beyond debate." The sine qua non of the clearly-established inquiry is "fair warning."

plausibly give rise to an entitlement to relief.[25]   And the plaintiffs have not carried their burden to show that the defense of qualified immunity is unavailable; they have not alleged or demonstrated that the officers violated a clearly established constitutional right.[26]   The individual capacity claims asserted against the NOPD officers must be dismissed.[27]

To the extent the plaintiffs' complaint can be read to assert individual capacity claims against Mayor Landrieu and

---

[25]As to Officer Brian Boyd, it appears that the plaintiffs attempt to claim that he violated D.T.'s right to be free from unreasonable seizure in violation of the Fourth Amendment.  But the plaintiffs have failed to allege facts that, if true, would demonstrate that Officer Boyd's conduct in escorting D.T. and his aunt to the hospital so that D.T. could undergo a psychological evaluation constituted an unreasonable seizure under the circumstances that amounts to a clear violation of his Fourth Amendment rights.  According to the allegations of the complaint, Officer Boyd simply told D.T.'s aunt to drive D.T. to the hospital and Boyd followed behind in his own car.  The plaintiffs have cited no law to suggest that this conduct violated a clearly established right that would overcome Officer Boyd's invocation of qualified immunity.

[26]Because the plaintiffs fail to invoke a Fourth Amendment case from any court that would suggest that the conduct they allege runs afoul of the Fourth Amendment, the Court does not undertake a detailed Fourth Amendment analysis; it need not carry the plaintiffs' burden for them.

[27]Finally, as to any remaining § 1983 claims that the plaintiffs attempt to assert against some unidentified officer, those claims are dismissed for failure to state a claim.  See Everson v. N.O.P.D. Officers (Names Unknown), No. 07-7027, 2009 WL 122759, at *2 (E.D. La. Jan. 15, 2009).  The plaintiffs have made no effort to amend their complaint to name the officer identified only as John Doe.  And, in any event, they appear to abandon any such claims by failing to brief the issue in their opposition papers.

Superintendent Serpas, any such claims must also be dismissed for failure to state a claim.  Landrieu and Serpas invoke their entitlement to qualified immunity and, not only are there no allegations that either Landrieu or Serpas directly participated in the alleged deprivation of D.T.'s constitutional rights, the plaintiffs abandon in their opposition papers any attempt to link Landrieu's and Serpas' individual liability to D.T.'s claim of constitutional violation and, thus, fail to overcome these defendants' entitlement to immunity.[28]

*B.*

The plaintiffs also assert § 1983 claims against the City, as well as perhaps official capacity claims against Mayor Landrieu and Superintendent Serpas.  The defendants' challenge the sufficiency of the complaint's allegations.  Because the plaintiffs make only conclusory assertions that are not entitled to the presumption of truth, these claims do not withstand the defendants' challenge.

Municipalities are "persons" within the meaning of § 1983. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  But "[t]hey are liable only for their own acts and not those attributed to them by principles of *respondeat superior*."  <u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004) (citing <u>Monell</u>, 436 U.S. at 691-92).  "[A] local government may not be sued under §

---

[28]As to Landrieu and Serpas, the plaintiffs suggest only the possibility of <u>Monell</u> liability in their opposition papers.

1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

In other words, municipal liability for civil rights violations under § 1983 is based on causation conduct, rather than respondeat superior. Bolton v. City of Dallas, 541 F.3d 545, 548 (5th Cir. 2008). Thus, in determining whether municipal liability attaches, the Court looks to whether the plaintiff has shown, first, that the municipality adopted a policy[29] with "deliberate indifference" to its known and obvious consequences, and, second, that the municipality was the "moving force" behind the constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).[30]

The City defendants contend that the plaintiffs fail to state a Monell claim that is plausible on its face. The Court agrees.

_____

[29]Official municipal policy pursuant to Monell, the U.S. Supreme Court has observed, "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." See Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011)(citations omitted)("These are 'action[s] for which the municipality is actually responsible.'").

[30]A plaintiff must show that unconstitutional conduct is directly attributable to the municipality through some official custom or policy; "isolated unconstitutional actions by municipal employees will almost never trigger liability." See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)(citations omitted).

The plaintiffs seem to assert that the City through Ronal Serpas failed to train, supervise, or discipline Officers Davis and Boyd.  The plaintiffs' allegations are too vague and conclusory.  Not only do the plaintiffs fail to identify in their pleadings an official policy or custom, they fall well short of alleging that the City adopted a policy or participated in a widespread practice with deliberate indifference to its known consequences;[31] they also fail to allege causation: a violation of constitutional rights whose "moving force" is the City's policy or custom.

Putting aside this Court's observation that the plaintiffs have failed to demonstrate that the individual defendants' conduct was objectively unreasonable in light of clearly established constitutional law,[32] the Court need only reference the limp

---

[31]To establish deliberate indifference, a plaintiff must show a pattern of violations that are fairly similar to what ultimately transpired so that the failure of the City to respond with different training, better supervision, or punishment reflects a deliberate and conscious choice to endanger constitutional rights.  See Valle v. City of Houston, 613 F.3d 536 (5th Cir. 1998).  The plaintiffs have failed to plead facts that if taken as true would allow the Court to draw the inference that the City is liable for the alleged misconduct of the named police officers.

[32]This Court's finding that the plaintiffs have failed to adequately allege that the police officers' actions were objectively unreasonable in light of clearly established law is distinguishable from the inquiry into whether the plaintiffs' claim that City defendants violated the plaintiffs' constitutional rights fails as a matter of law.  Of course, if the plaintiffs fail to allege a constitutional violation, the inquiry into Monell liability is moot.  Cf. Becerra v. Asher, 105 F.3d 1042, 1048 (5th Cir. 1997)("[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing").  To the extent the plaintiffs seek to hold the City defendants liable for

allegations of the complaint to demonstrate that the plaintiffs have failed to state a claim for municipal liability.  In Count 4, the plaintiffs focus on NOPD Officer Boyd, Ronal Serpas, and the NOPD generally, with mention of Officers Davis and John Doe.  The plaintiffs assert that Officer Brian Boyd was acting under the direction and control of Superintendent Ronal Serpas and for the New Orleans Police Department and that

> [a]cting under color of law and pursuant to official policy or custom, Ronal Serpas and the New Orleans Police Department knowingly, recklessly, or with deliberate indifference to [D.T.'s] rights, failed to instruct, supervise, control and discipline on a continuing basis Officers Davis and John Doe in their duties to refrain from: (a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities; (b) unlawfully and maliciously arresting a citizen and otherwise using unreasonable excessive force by placing a seven year old defenseless child in handcuffs which is a violation of [D.T.'s] his civil rights; (c)conspiring to violate the rights, privileges and immunities guaranteed to [D.T.] by the Constitution and laws of the United States and Louisiana; and (d) otherwise depriving [D.T.] of his constitutional and statutory rights, privileges, and immunities under [federal and state law].

These allegations are so generic and conclusory, they are not entitled to the presumption of truthfulness.  They rely on the false safety of boilerplate.  Courts "do not presume true a number of categories of statements," the Fifth Circuit reminds, "including

---

substantive due process violation, this Court has already determined that the plaintiffs' substantive due process claim fails as a matter of law and the plaintiffs fail to suggest how the substantive due process analysis would be materially different as applied to the City defendants' conduct toward D.T.

legal conclusions; mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" Morgan, 659 F.3d at 370 (citations omitted).  These allegations simply fail to include sufficient factual matter which, accepted as true, would state a claim for municipal liability that is plausible on its face.  The factual allegations in the complaint focus instead on individual police officer conduct, for which the City is not liable, absent a showing that the moving force behind the conduct is the City's identifiable policy or custom.

IV.

The plaintiffs have also named the NOPD as a defendant.  However, the NOPD is not recognized as a legal entity or person capable of being sued.  See, e.g., Everson v. N.O.P.D. Officers (Names Unknown), No. 07-7027, 2009 WL 122759, at *2 (E.D. La. Jan. 15, 2009).  Accordingly, the claims asserted against the NOPD are dismissed.

Finally, the plaintiffs have asserted various state law claims in conjunction with their § 1983 claims.  This Court has subject matter jurisdiction over the plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 and discretionary supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Section 1367(c) provides that "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ...

(3) the district court has dismissed all claims over which it has original jurisdiction." Indeed, when a district court dismisses all federal claims before trial, it is usually accepted practice to dismiss any pendent state law claims. See Bass v. Parkwood Hosp., 180 F.3d 234, 246 (5th Cir. 1999)(citation omitted). Because this Court has determined that dismissal of the plaintiffs' § 1983 claims is warranted, this Court declines to exercise supplemental jurisdiction over any remaining state law claims; any such claims are dismissed without prejudice.

Accordingly, the defendants' motions to dismiss are GRANTED and the plaintiffs' claims are hereby dismissed. With the exception of the plaintiffs' state law claims and the plaintiffs' claims against the unserved school security officers, which are dismissed without prejudice, the plaintiffs' claims are dismissed with prejudice.

New Orleans, Louisiana, August 2, 2012

MARTIN C. FELDMAN
UNITED STATES DISTRICT JUDGE